2010 WY 157

**Shon ANDERSON, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–10–0086.

Supreme Court of Wyoming.

Dec. 3, 2010.

Representing Appellant: Michael D. Newman, Hampton & Newman, LC, Rock Springs, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; John W. Renneisen, Deputy Attorney General; James Michael

Causey, Senior Assistant Attorney General; Kristen J. Hanna, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Shon Anderson, challenges an order from the Office of Administrative Hearings (OAH) denying his claim for additional Workers' Compensation Permanent Partial Impairment (PPI) benefits. The OAH rated his PPI using the 6th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, which was the most recent edition available in 2008 when Mr. Anderson reached maximum medical improvement. Mr. Anderson contends that his PPI should have been rated using the 5th edition of the AMA Guides, which was the most recent edition available in 2003 when he incurred his original injury. We affirm.

### ISSUES

[¶ 2] Mr. Anderson presents two issues:

1. Was the Office of Administrative Hearings' decision holding that Mr. Anderson's impairment should be calculated according to the 6th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment arbitrary, capricious, or otherwise not in accordance with law?

2. Does the Wyoming Workers' Safety and Compensation Division's interpretation and application of W.S. § 27–14–405(g) result in an unconstitutional delegation of legislative authority that is contrary to Article 10 Section 4 of the Wyoming Constitution?

### FACTS

[¶ 3] Mr. Anderson suffered a compensable lower back injury in 2003. In December 2004, he underwent the first of two surgeries on his lower back. He subsequently reached maximum medical improvement and the Division referred Mr. Anderson to Dr. Michael Kaplan for a PPI rating. Dr. Kaplan concluded that Mr. Anderson had a 10% PPI. He performed his evaluation using the 5th edition of the American Medical Association Guides to the Evaluation of Permanent Impairment. The Division subsequently awarded Mr. Anderson PPI benefits based upon Dr. Kaplan's rating.

[¶ 4] In December 2007, Mr. Anderson underwent a second surgery on his lower back. The surgery was performed by Dr. Brent Clyde. After reaching maximum medical improvement, Mr. Anderson sought additional PPI benefits. He was referred to Dr. Clyde for an evaluation. Using the 6th edition of the American Medical Association Guides, Dr. Clyde calculated Mr. Anderson's PPI at 7%. Mr. Anderson disagreed with this rating and requested a second evaluation. He was referred to his original surgeon, Dr. Kaplan, for another evaluation. Dr. Kaplan also used the 6th edition and assigned a PPI rating to Mr. Anderson of 8%.

[¶ 5] The Division issued a Final Determination of Permanent Partial Impairment Benefit on October 6, 2008 and denied Mr. Anderson's claim explaining:

The Workers' Safety and Compensation Division has received the second opinion regarding your permanent impairment rating. Dr. Kaplan assigned [an] 8 percent impairment to your body as a whole, related to your 4/6/2003 injury to your lumbar spine. The Division has reviewed this rating along with the original rating of 7 percent performed by Dr. Clyde on June 30, 2008 and has determined that you are entitled to a 0 percent impairment as you received a 10 percent impairment May 1, 2005. You may continue to submit claims related solely to the original injury.

[¶ 6] Mr. Anderson objected to the determination on the basis that his PPI should have been calculated using the 5th edition of the AMA Guides. The matter was referred to the OAH. Both parties filed motions for summary judgment, agreeing that there were no issues of material fact and the only question was which edition of the AMA Guides should be used to rate Mr. Anderson's PPI. The OAH issued an order in May 2009 concluding that the 6th edition was proper and granting the Division's motion for

summary judgment. Mr. Anderson appealed to the district court and the OAH decision was affirmed. Mr. Anderson timely appealed to this Court.

## STANDARD OF REVIEW

[¶7] Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

"We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law." *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 66, ¶11, 232 P.3d 1, 4 (Wyo.2010); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶26, 188 P.3d 554, 561–62 (Wyo. 2008). When we consider an appeal from a district court's review of an administrative agency's decision, we give no deference to the district court's decision. We review the

case as if it had come directly from the administrative agency. *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 10, ¶9, 223 P.3d 559, 561 (Wyo. 2010); *Dale,* ¶8, 188 P.3d at 557.

## DISCUSSION

[¶8] In this case, there is no factual dispute. Mr. Anderson claims that the OAH incorrectly applied the law to the undisputed facts. He contends that under the applicable statutes, a PPI must be rated using the most recent edition of the AMA Guides at the time of the original injury. The Division contends that a PPI rating must be made based on the most recent edition of the AMA Guides at the time Mr. Anderson reached maximum medical improvement. We agree with the Division.

[¶9] Our rules of statutory interpretation are well established.

First, we determine if the statute is ambiguous or unambiguous. A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations.

*Sinclair Oil Corp. v. Wyoming Dep't of Revenue,* 2010 WY 122, ¶7, 238 P.3d 568, 570–71 (Wyo.2010) (quoting *BP America Production Co. v. Dep't of Revenue,* 2006 WY 27, ¶20, 130 P.3d 438, 464 (Wyo.2006)). In determining whether a statute is ambiguous

[w]e begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Ball v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 29, 239 P.3d 621, 629 (Wyo.2010).

[¶ 10]   Mr. Anderson was awarded workers' compensation benefits pursuant to Wyo. Stat. Ann. § 27–14–405 (LexisNexis 2007), which stated, in relevant part:

> (f) An injured employee suffering an **ascertainable loss** may apply for a permanent partial impairment award as provided in this section.
>
> (g) An injured employee's impairment shall be rated by a licensed physician using **the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment.** The award shall be paid as provided by W.S. 27–14–403 for the number of months determined by multiplying the percentage of impairment by forty-four (44) months.[1]

(Emphasis added.)

Wyo. Stat. Ann. § 27–14–102(a)(ii) defines "ascertainable loss" as:

> (ii) "Ascertainable loss" means **that point in time in which it is apparent that permanent physical impairment has resulted from a compensable injury,** the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury.

(Emphasis added.)

[¶ 11]   The hearing officer reached the following conclusion:

> Reading the statute as a whole, and reviewing the definition of "ascertainable loss", leads this Hearing Examiner to believe that the AMA Guidelines in effect at the "point in time" when the employee/claimant is deemed to have suffered an ascertainable loss apply.   Ascertainable loss is defined as "that point in time in which it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due [to] the injury can be determined and the physical impairment will not substantially improve or deteriorate

because of the injury", Wyo. Stat. Ann. § 27–14–102(a)(ii) (LexisNexis 2007).

Mr. Anderson contends that this conclusion was in error and the statute is ambiguous because it does not specify whether the rating should be determined using the most recent edition at the time of the injury, or at the time of the ascertainable loss.

[¶ 12]   The statute requires that an injured employee's impairment rating be determined using the most recent edition of the AMA Guides. Wyo. Stat. Ann. § 27–14–405(g).   Subsection (g) does not explicitly state when the impairment rating should occur.   However, Wyo. Stat. Ann. § 27–14–405(f) states that an employee is eligible for a PPI award when he has suffered an ascertainable loss.   An ascertainable loss means "that point in time in which it is apparent that permanent physical impairment has resulted from a compensable injury."   Wyo. Stat. Ann. § 27–14–102(a)(ii).   We have said "[a]n 'ascertainable loss' is commonly measured at the point of 'maximum medical improvement.'" *Phillips v. TIC–The Industrial Co. of Wyo., Inc.*, 2005 WY 40, ¶ 33, 109 P.3d 520, 534 (Wyo.2005).   In this case, it is undisputed that "maximum medical improvement" occurred in June 2008, after Mr. Anderson's second surgery.   At that time, the 6th edition was the "most recent edition."

[¶ 13]   Mr. Anderson contends that the statute should be interpreted by applying the general rule that an employee's claim for workers' compensation benefits is governed by the law in effect when the injury occurred. *See Loberg v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 48, ¶ 3 n. 1, 88 P.3d 1045, 1047 n. 1 (Wyo.2004).   The use of the 6th edition, however, is consistent with the general rule.   As explained by the district court in its well-reasoned decision letter:

> The language of Wyo. Stat. Ann. § 27–14–405 has not changed since the time of [Mr. Anderson's] work injury.   Then, as now, the statute requires the most recent edition of the AMA guides to be used.   When [Mr. Anderson] was assigned his first PPI rating in 2005, the 5th edition was the

---

1.   In 2009, subsection (g) was amended to change the number of months used in the permanent impairment calculation from "forty-four (44) months" to "sixty (60) months."

"most recent". At the time of his second PPI rating in 2008, the 6th edition was [the] "most recent". Although the AMA guides have changed, the requirements under the statute are the same.

. . .

[T]he applicable statutory language must be read *in pari materia*. If one were to read Wyo. Stat. Ann. § 27–14–405(g) alone, it may be ambiguous. However, when subsection (g) is read along with Wyo. Stat. Ann. §§ 27–14–405(f) and 27–14–102(a)(ii) (LexisNexis 2007), the language is clear and unambiguous. The fact that the Legislature did not use the words "at the time of the injury" or something similar in subsection (g) merely demonstrates the clear meaning of the statutory language and the legislative intent.

It is clear from the plain language of the statutes in question that they are unambiguous. After an employee/claimant suffers an "ascertainable loss", as defined by Wyo. Stat. § 27–14–102(a)(ii) (LexisNexis 2007), he may apply for a PPI award. Wyo. Stat. Ann. § 27–14–405(f).

[¶ 14] The analysis is consistent with our precedent. In the case of *In re Nielsen*, 806 P.2d 297 (Wyo.1991), the issue presented was whether a totally disabled employee should be compensated at rates set on the date of his accident, in 1963, or on the date it was medically determined that he was totally disabled, in 1988. We held the employee/claimant's "injury" occurred in 1988 and that he should be "paid at the rates applicable in 1988 when the medical decision was made from which appellant became aware that he was 100% disabled." *Id.* at 298.

[¶ 15] Mr. Anderson asserts that *In re Nielsen* is distinguishable because it involves a claim for total disability benefits rather than impairment benefits. He maintains that a person, in most cases, can still work if he has an impairment. He also notes that our decision in that case resulted in the employee receiving additional benefits.

[¶ 16] The district court rejected this argument and we agree with its analysis:

While it is true that *Nielsen* is not directly on point and that "impairment" and "disability" are not the same thing, *Nielsen* is nevertheless persuasive authority and its reasoning is applicable to [Mr. Anderson's] case. [Mr. Anderson] mischaracterizes the issue facing the *Nielsen* court. The underlying issue facing the *Nielsen* court is the same as that facing this Court—the correct interpretation of a statute. *Id.* at 298. In *Nielsen*, the Wyoming Supreme Court searched for "the most prudent and accurate construction of W.S. 27–14–403(c)." Although the *Nielsen* court did discuss the significant impact of its decision in terms of benefits received in the body of its decision, this was not the sole reason for its decision. *See Id.* at 300. Rather, this was one of many factors the *Nielsen* court considered in its application of the statute. *Id.* at 299. In *Nielsen*, the statute in question was ambiguous, so the court had to employ the principles of statutory construction to determine its meaning. In [Mr. Anderson's] case, the statutory language is clear and unambiguous. In addition, the OAH's decision is consistent not only with the clear and unambiguous statutory language of Wyo. Stat. Ann. §§ 27–14–102(a)(ii) and 27–14–405(f) and (g), but also with the reasoning of the Wyoming Supreme Court in *Nielsen*.

(Footnote omitted.)

[¶ 17] Mr. Anderson essentially asserts that the 6th edition does not provide the most reliable guidance in determining a PPI rating. He supports his assertion with excerpts from a letter from Dr. Clyde which describes the 6th edition as "ambiguous" and "difficult to interpret." [2] Mr. Anderson also contends that several states have discredited or rejected the 6th edition in determining impairment, but provides no authority for this assertion. We note that Dr. Kaplan also performed a PPI rating after Mr. Anderson had reached maximum medical improvement following the second surgery and did not indicate that the 6th edition was unworkable or unreliable. More significantly, this Court is not in a position to decide which edition

---

2. In the same letter, Dr. Clyde indicated that Mr. Anderson's PPI would have been between 20– 23% if the 5th edition had been used for the rating.

provides the most reliable guidance. The legislature clearly intended that the PPI be rated using the most recent edition at the time of the ascertainable loss. The 6th edition of the AMA Guides was the most recent edition when Mr. Anderson reached maximum medical improvement following his second surgery. The OAH's determination that Mr. Anderson's PPI was properly rated according to the 6th edition was in accordance with the law.

[¶ 18]   In his second argument, Mr. Anderson challenges the constitutionality of Wyo. Stat. Ann. § 27–14–405(g).  He appears to assert that the statute is unconstitutional per se because it is vague and ambiguous. He also appears to contend that the Division's application of the statute violates the constitutional provision which prohibits laws limiting the amount of damages to be recovered in workers' compensation cases.  *See* Wyo. Const. art. 10, § 4.

[¶ 19]   We must decline to address Mr. Andersons' constitutional questions.  In an administrative agency appeal, neither the district court nor this Court has the authority to address the constitutionality of a statute.  *Torres v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 92, ¶ 6, 95 P.3d 794, 795 (Wyo.2004).  "This prohibition exists regardless of whether the question concerns the constitutionality of the statute per se or the constitutionality of the statute as applied."  *Williams v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 57, ¶ 18, 205 P.3d 1024, 1033 (Wyo.2009) (internal quotation marks omitted).  The proper avenue for challenging the constitutionality of a statute is an independent action for declaratory judgment.  *Id., see also In re Billings*, 2001 WY 81, ¶ 41, 30 P.3d 557, 572 (Wyo. 2001).

[¶ 20]   Affirmed.