2003 WY 1

**BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF SHERIDAN COUNTY, Appellant (Respondent),**

v.

**Leslie MARTIN, Appellee (Petitioner).**

No. 02–40.

Supreme Court of Wyoming.

Jan. 6, 2003.

Jay A. Gilbertz of Yonkee & Toner, LLP, Sheridan, Wyoming, Representing Appellant.

Greg L. Goddard of Goddard, Perry and Vogel, Buffalo, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Board of Trustees of Memorial Hospital of Sheridan County (Board), brings an appeal to this Court, challenging the order of the district court, which remanded Appellee's, Leslie Martin's (Martin), employment termination case to the Board for additional proceedings.

* Chief Justice at time of expedited conference.

[¶ 2] We will dismiss the appeal on the basis that the district court's order remanding to the Board for further proceedings is not an appealable order, as contemplated by W.R.A.P. 1.05, and send the matter back to the district court for enforcement of the remand order.

## ISSUES

[¶ 3] The Board posits these issues:

I. Was there substantial evidence to support the Trustees' conclusion that Leslie Martin was given a pre-termination meeting with her supervisors?

II. What procedure should be used to correct a clerical error in the findings of fact of an administrative agency which misidentified the date of a meeting, but is otherwise supported by the record?

Martin couches the issues in these terms:

1. Whether Memorial Hospital of Sheridan County followed the procedures set forth in its Employee Manual when terminating Appellee.

2. Whether the Board of Trustees for the Memorial Hospital of Sheridan County's decision upholding Appellee's termination was supported by substantial evidence in the record.

In its reply brief, the Board addresses two additional issues:

I. Whether the Appellee, having failed to cross-appeal, can attack the district court's order and request relief greater than that granted by the district court.

II. If properly before this court, whether there is substantial evidence to support the Board's decision upholding Martin's termination.

## FACTS

[¶ 4] The facts pertinent to this appeal are relatively brief, though the facts relevant to the determination of the validity of the Board's action approving the termination of Martin's employment are considerably more complex. As background, we will simply note that Martin was a pediatric nurse at the hospital and was fired from her job on the

basis that she revealed confidential patient information about an individual identified in the record as "J.W." The hospital's personnel manual authorizes termination for a violation of patient confidentiality. J.W. was a neighbor of Martin's, and they had considerable differences between them as neighbors, principally because of Martin's dogs. Martin had a sled dog team, and she kenneled 18 dogs on her property. On January 22, 2001, Martin was interviewed by Larque Richter, a friend to J.W. and a reporter for KOTA Territory, a television broadcast news organization. The subject of the interview was Martin's sled dogs and an upcoming sled dog race. When Richter asked Martin if her dogs had caused problems with her neighbors, Martin told of her problems with J.W. and further stated that J.W. "was a drunk in my opinion and she was a detox case, meaning she ought to be in detox because she acts like it."

[¶ 5] A week or so later, Richter reported that information to J.W. and J.W., in turn, reported it to the hospital, demanding action. As a first step in the disciplinary process Martin was asked to attend a "meeting" with her supervisors. At that meeting, the supervisors concluded that Martin admitted that she violated patient confidentiality. Martin was permitted to prepare her thoughts on the matter and had a second meeting with her supervisors. The thrust of Martin's presentation at that meeting was to document the details of the disagreements she had experienced with J.W. The second meeting was brief, and Martin's supervisors did not consider her materials relevant to the breach of patient confidentiality. It is now Martin's contention that had she received notice of the purpose of the initial meeting, she would have been prepared to better explain that she knew of J.W.'s alcohol/drug problems from sources other than hospital records. Thus, while she did say the things attributed to her by Richter, that information was gleaned from contacts with J.W. that were unrelated to her duties as a nurse at the hospital.

[¶ 6] To a large extent, the termination was based upon the impression hospital personnel had that Martin admitted to a violation of the confidentiality policy. However, the record reflects that this impression actually may have been a conclusion reached by hospital personnel, rather than an actual confession to such a violation by Martin.[1] Martin denied that she had revealed confidential hospital information. J.W. had, in fact, been a detox patient at the hospital on several occasions, but Martin had never been involved in her treatment, and so far as the hospital knew, Martin had never had access to J.W.'s hospital/medical records. In addition, Martin testified, and the record bears out, that she did not have notice of the subject of the meeting to which she was called until she arrived at that meeting, which resulted in her dismissal. It is this phase of the termination proceedings that caused concern for the district court. Martin had an otherwise unblemished record during her employment with the hospital. The Board approved the action terminating Martin's employment.

[¶ 7] A petition to review that administrative action was filed in the district court under W.R.A.P. 12. The district court determined that the findings of fact in paragraph 12[2] of the Board of Trustees' April 16, 2001 order were not supported by the record, and that Martin may not have had a sufficient opportunity to present defenses that she might have had to her termination, prior to the termination decision being made (and in some senses, then cast in concrete). For these reasons, it remanded the matter to the Board "for the limited purposes of allowing ... Martin to submit documents or statements in addition to those already part of the record in defense of her termination." Clearly, the remand is for a limited purpose,

---

1. Hospital personnel took notes during the meeting(s) that supervisors had with Martin. Those notes were identified and discussed at the hearing, but were not made a part of the record on appeal.

2. That paragraph provides:

12. Martin was given a pre-termination hearing with her supervisors, Denise Karjewski and Linda Benth, on January 9, 2001 and given an opportunity to explain the situation. During the pre-termination hearing, Martin admitted that she had revealed confidential patient information relating to J.W. to Larque Richter during her interview with Richter.

but the transcript of the proceedings fleshes out the terse language of the remand order:

THE COURT: On behalf of the trial court, I'm determined not to substitute my judgment for the administrative agency who saw and heard applicable witnesses with respect to sufficiency of evidence; but I am still troubled by the procedure that the hospital followed, particularly in light of the statement from one of the witnesses that if an employee had presented evidence on February 14, 2001 that—and I'm paraphrasing—but to the effect that if she had not used her position at the hospital to gain information and divulge confidential information that it could have made a difference at that point. And, yet, it appears that the hospital had already made up its mind as to what it was going to do.

And in terms of the employee's ability to appeal or question the termination, she apparently has still not received the written statement of the reasons for termination after the decision was made. And the hospital was arguing that, well, we really——all we did was make the recommendation that she would be fired as of February 16th, unless, of course, she changed our minds on February 14th. She didn't change our minds, so the decision stands. That's not really the way it's supposed to work under the rules.

Counsel, the Court believes that there have been a couple of errors in the administrative proceedings that resulted in the termination of this employee. One, when you look at the Board of Trustees' Findings of Fact and Conclusions of Law signed April 16, 2001 by chair Evelyn Ebzery, Finding 12, you see the determination that employee was given a pre-termination hearing with her supervisors on January 9th, 2001 and given an opportunity to explain the situation.

Aside from the obvious error that any meeting with the employee could not have been on January 9th but, rather, was February 9th, there's a problem in designating that hearing as a pre-termination hearing. The pre-termination hearing is one contemplated in Subsection D on Page 26 of the handbook, not the investigation hearing. So making a conclusion at that point that the employee was given an opportunity to explain the situation is somewhat misleading in terms of analyzing whether or not personnel policies were followed.

There was a meeting on February 9th for purposes of conducting an investigation. The employee was not notified on that date that there had been a recommendation that she be terminated. The hospital did make a recommendation of termination at sometime prior to February 14 and did advise the employee on February 14th of their recommendation and provided some opportunity for explanation by employee, albeit brief, and basically telling employee that she was fired effective February 16th. So, the Court finds that she did not have sufficient opportunity to present any defenses that she might have had at that time.

What's causing my hesitation and is troublesome to me, counsel, is that I'm not sure that this is going to make any difference, because even when questioned by counsel, employee did not give me any indication as to the type of new information she might be able to submit for the board's consideration.

But based on the failure to follow their own personnel policies,[3] the Court is going to remand this case to the hospital board—or the hospital's administrative staff designated by the administrator for purposes of allowing employee an opportunity to submit documents or statements in addition to those already part of the record in defense of termination.

[¶ 8]    The Board filed a notice of appeal seeking further review in this Court and challenging the district court's remand order.

## JURISDICTION

[¶ 9]    The parties do not directly raise the matter, but we have determined that it is necessary for us to revisit the question of

---

**3.**   Our examination of the record reveals that the district court's assessment of the hospital's personnel rules is correct, and we need not burden this opinion with a verbatim recitation of those policies. We also acknowledge that those policies are clear beyond cavil that the unauthorized release of confidential patient information is a basis for immediate termination of an employee.

whether or not an order of the district court remanding an administrative agency case for further evidentiary proceedings is an appealable order under the Wyoming Rules of Appellate Procedure as they are currently formulated. W.R.A.P. 1.05 defines "appealable order" as follows:

> An appealable order is:
>
> (a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment; or
>
> (b) An order affecting a substantial right made in a special proceeding; or
>
> (c) An order made upon a summary application in an action after judgment; or
>
> (d) An order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), Wyo. R. Civ. P.; if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party; or
>
> (e) Interlocutory orders and decrees of the district courts which:
>
> (1) Grant, continue, or modify injunctions, or dissolve injunctions, or refuse to dissolve or modify injunctions; or
>
> (2) Appoint receivers, or issue orders to wind up receiverships, or to take steps to accomplish the purposes thereof, such as directing sales or other disposition of property.
>
> (See Rule 13 for additional guidance on review of interlocutory orders.)

[¶ 10] In *Big Horn County Commissioners v. Hinckley*, 593 P.2d 573, 577 (Wyo.1979) (citing *Arp v. State Highway Commission*, 567 P.2d 736, 738–39 (Wyo.1977) and W.R.A.P. 1.05), we opined:

> Turning first to Hinckley's jurisdictional contentions, this court previously denied Hinckley's motion to dismiss. This motion, which is renewed here, is premised on the belief that the district court's order—remanding the case to the Board for a hearing on necessity and other issues—is not a final order under Rule 1.05, W.R.A.P., and our holding in *Arp v. State Highway Commission*, Wyo., 567 P.2d 736 (1977). We determined previously, and now hold, that the district court's order affects a substantial right of the Board and prevents a judgment in favor of the Board's establishment of a road by prescription under § 24-1-101, *supra*. It is, therefore, a final appealable order under Rule 1.05(1), W.R.A.P.

[¶ 11] At the time the *Hinckley* decision was published, the mission of W.R.A.P. 1.05 was to define a "final order" and it provided:

> A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment; (3) an order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), W.R.C.P.; if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party.

572–577 Wyo. Reporter, Rules Section, XXXV (1978).

[¶ 12] The 1992 amendments to the appellate rules discontinued the long-established reliance on the concept of a "final order" in favor of reliance on the more flexible concept of an "appealable order." In addition, those amendments gave full recognition to the Court's practice of granting writs of certiorari by adopting Rule 13. The comments, which accompanied the initial publication of that rule, were these:

> Comment: This rule represents a major departure from the former rules. It encompasses former Rule 13, but it also provides for interlocutory appeals. It does reflect the practice of the Supreme Court with respect to Writs of Certiorari, but specific procedures are provided for accomplishing the petition. The discretion is vested in the reviewing court as distinguished from the certification procedure in which the discretion of the trial court is addressed initially.

823–832 Wyo Reporter, Rules Section, CII–CIII (1992).

[¶ 13] It is our conclusion that our state system is now different from that instituted in the federal courts where remand orders similar to those at issue here are appealable

as "final orders." *See Forney v. Apfel,* 524 U.S. 266, 118 S.Ct. 1984, 1986–88, 141 L.Ed.2d 269 (1998). However, because of the delay caused by such appeals, they are rare even in the federal system. III Richard J. Pierce Jr., *Administrative Law Treatise,* § 18.1 at 1324 (4th ed.2002).

[¶ 14]  W.R.A.P. 12.09(d) provides:

(d) The district court may, in its discretion, remand the case to the agency for proceedings in accordance with the direction of the court. The district court shall enter judgment reversing, vacating, remanding or modifying the order for errors appearing on the record.

[¶ 15]  That rule invests the district court with discretion to remand an administrative action to the agency for additional proceedings if that is the appropriate remedy under the circumstances. We conclude that the district court exercised its discretion prudently in this matter.

[¶ 16]  We hold that a judgment of the district court remanding an administrative proceeding to the agency for further proceedings is not an appealable order under W.R.A.P. 1.05. In those rare instances where review is deemed necessary because of the spectre of "irreparable harm" (or something of similar magnitude), Rule 13 is available as a safety valve, within the sound discretion of this Court. In this instance we will dismiss the appeal, but at the same time we have undertaken to treat the appeal as a petition for writ of review under Rule 13, which we deny. The only harm the Board might suffer is an enlargement of a back pay award should Martin succeed in the review process. The matter is remanded to the district court for further proceedings consistent with the district court's judgment/order.